UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEAN KIRCHNER,

    Plaintiff,

v.                                                     Case No. 1:06-CV-763

G.E. GROUP LIFE ASSURANCE CO.         HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION

Plaintiff, Jean Kirchner ("Kirchner"), has sued Defendant, G.E. Group Life Assurance Co. ("G.E."), for breach of contract and breach of the Michigan Consumer Protection Act based on G.E.'s denial of her claim for long term disability benefits. Because Kirchner's claims concern benefits under an employee welfare benefit plan, her claims are governed by, and limited to, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461. Presently before the Court is G.E.'s motion for entry of judgment pursuant to the procedure set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), for determining ERISA denial of benefits claims. Despite a Court order, Kirchner has not responded to the motion, nor has she filed her own cross motion for judgment. For the reasons set forth below, the Court will grant G.E.'s motion and enter judgment affirming its denial of benefits.

## Facts

Kirchner was employed by Munson Medical Center as a Director of Patient Access Services. According to the position description, her job was largely administrative and sedentary in nature.

(Administrative Record ("AR") at 99-103.) As a Munson employee, she was covered by G.E.'s Group Long Term Disability Insurance. (*Id.* at 1.) Under this plan, a claimant is considered totally disabled when the claimant is "unable to perform all the material and substantial duties of [the claimant's] regular occupation." (*Id.* at 10.) Benefits become payable at the end of the Elimination Period, 180 days from the start of the disability. The policy vests G.E. with "discretionary authority to make claim eligibility and other administrative determinations," *Id.* at 32, and states that G.E.'s decisions "shall not be disturbed unless [G.E.] has acted in an arbitrary and/or capricious manner," *Id.*

On August 2, 2002, Kirchner went on medical leave to treat breast cancer. (*Id.* at 84.) On January 24, 2003, Kirchner applied for long term disability benefits citing breast cancer and concurrent chronic pain. (AR at 84.) As part of her application, Kirchner submitted three attending physician's statements focusing on complaints of right shoulder and neck pain dating back to 1999. Dr. Lorah Wright described Kirchner's symptoms as "increasing [right] shoulder and neck pain with any activity involving the right arm/shoulder repetitive activities." (*Id.* at 41.) Dr. Wright noted that Kirchner had not reached maximum medical improvement and would not recover sufficiently to return to work until August 2003. (*Id.*) Dr. Keira Duvernoy's statement indicated that Kirchner's "upper extremity use must be severely limited" and that she had not reached maximum medical improvement. (*Id.* at 67.) Lastly, Dr. Richard Ball's notes indicated that Kirchner "is essentially pain-free when her activity level is low." (*Id.* at 82.)

On February 6, 2003, the Social Security Administration denied Kirchner's claim for disability benefits based on her breast cancer, treatment complications, and right neck pain. (*Id.* at 106.) During this time, Kirchner also underwent ovary surgery under the care of Dr. William

Nowak. (*Id.* at 269.) On April 8, 2003, Dr. Nowak sent G.E. his attending physician's statement noting that Kirchner was disabled as a result of this surgery from February 2, 2003, to March 3, 2003. (*Id.*) On April 10, 2003, Dr. Ball notified G.E. that "a myelogram was done on March 5, 2003 which was completely unremarkable." (*Id.* at 299.) Based on this, Dr. Ball stated that he could "no longer support a disability based on the neck and right upper extremity pain with respect to her previous job." (*Id.*) Dr. Ball proposed a four-week phase-in period for Kirchner's return to full time employment. (*Id.*)

On April 14, 2003, Dr. Wright provided a new attending physician's statement discussing Kirchner's symptoms of right shoulder and neck pain. (*Id.* at 292.) Dr. Wright indicated that Kirchner had a moderate limitation of functional capacity and that she was only capable of clerical/administrative (sedentary) work. (*Id.*) Attached to the statement was a functional assessment concluding that "Kirchner may be capable of working sedentary type work on a part time basis with the ability to take breaks when necessary." (*Id.* at 293.) On May 2, 2003, Dr. Wright wrote G.E. to express her disagreement with Dr. Ball about Kirchner's capacity to return to work at the present time. (*Id.* at 285.) While noting that Kirchner has the potential to return to a part-time sedentary job eventually, Dr. Wright stated that she "would prefer to see her continue with a very slowly progressive rehabilitation program in order to optimize her functioning prior to putting her back to work." (*Id.*) Additionally, Dr. Duvernoy wrote G.E. on May 2, 2003, expressing her belief that although Kirchner's recent myelogram was negative, she "is not ready to return to work." (*Id.* at 288.)

On May 2, 2003, G.E.'s own medical consultant, having reviewed all the medical information provided, stated that "it is in my opinion that [Kirchner] is physically capable of returning to her own

3

occupation at this time." (*Id.*) Further, the medical consultant thought "that appropriate restrictions/limitations of progressive return to full time work starting on a part time basis (as delineated by Dr. Ball) are reasonable and are also consistent with the functional assessment." (*Id.*) Based on this evidence, G.E. sent Kirchner a letter on May 13, 2003, informing her that it would pay benefits through April 30, 2003, and deny benefits thereafter.

After this determination, G.E. received two more statements from physicians. First, Dr. Ball noted that while he still does "not see any indication for extended disability as things stand at this point, [his] statements rest on [Kirchner] having an administrative job with little physical stress and optimal ergonomics." (*Id.* at 384.) Additionally, Dr. Wright sent a letter to G.E. on June 2, 2003, stating that she agrees with Dr. Ball's "assessment that [Kirchner] needs to have a sedentary job with primarily administrative responsibilities." (*Id.* at 315.) Moreover, Dr. Wright recommended a gradual phase-in schedule to acclimate Kirchner into a working environment. (*Id.*)

On September 23, 2003, Kirchner, via counsel, appealed G.E.'s determination. (*Id.* at 317.) On December 10, 2003, G.E. notified Kirchner's counsel that he failed to provide any additional medical documentation and affirmed its determination denying benefits. (*Id.* at 319-322.) On April 6, 2004, Kirchner's counsel sent G.E. a one-page notice of award from the Social Security Administration. Although Kirchner failed to provide the Social Security decision, accompanying doctors' notes indicate that Kirchner switched her basis for seeking Social Security benefits from neck and right shoulder pain to depression. Among the materials submitted was a letter from Dr. Vincent Cornellier stating his belief that because of depression and anxiety related to her cancer treatment and chronic pain, "she is disabled from the aforementioned, rather chaotic and demanding and stress-producing situation, and that she will more than likely be disabled from that situation for

4

at least one year, if not two." (*Id.* at 338.)  Additionally, Dr. Wright wrote a letter finding that because of Kirchner's depression, "her capacity to cope with a full time job is very limited." (*Id.* at 342.)

Although Kirchner continued to provide G.E. with additional medical records surrounding her neck and shoulder pain, she never tendered the Social Security decision.  G.E. sent all of Kirchner's medical records to Dr. Clayton Cowl, a specialist in occupational and internal medicine with the Mayo Clinic.  Dr. Cowl determined that "Kirchner would, from an occupational medicine perspective, be able to perform sedentary work with limited lifting requirements (no more than 10 pounds)." (*Id.* at 499.)  However, Dr. Cowl reserved judgment on Kirchner's depression to someone trained in psychiatry. (*Id.*)  Therefore, G.E. sent Kirchner's records to a board-certified psychiatrist, Dr. Robert Polsky, for independent medical review.  Dr. Polsky noted that "[t]here is no complete psychiatric or psychological evaluation in the documentation reviewed, no psychological testing has been done or at least not documented, and there are no formal mental status examinations noted in this file." (*Id.* at 539.)  Because of this, "[t]here is no clear psychological or psychiatric evaluation, no evidence from psychological testing, nor any evidence from a formal mental status examination that would substantiate any significant psychiatric restrictions and/or limitations." (*Id.*)

Based on these opinions, G.E. notified Kirchner that it was issuing its final decision denying disability benefits.  Kirchner filed this action in Grand Traverse County Circuit Court, and G.E. removed the matter to this Court.  G.E. filed a brief for judgment on the administrative record affirming its denial of disability benefits after April 30, 2003, and requiring Kirchner to reimburse G.E. the $4,496.08 she received from Social Security during the period she was receiving G.E. disability benefits.

**Discussion**

**I.	Standard of Review**

A threshold issue the Court must decide is the standard of review that applies to G.E.'s decision to deny benefits. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)).

The disability policy contains that following language:

> [G.E.] shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by [G.E.] shall not be disturbed unless [G.E.] has acted in an arbitrary and/or capricious manner.

(*Id.* at 32.) Kirchner does not dispute that this language is a clear grant of discretion to G.E. to make benefit eligibility determinations, and the Court concludes that this language is sufficient under the law to support application of the more deferential arbitrary and capricious standard to G.E.'s decision.

The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)).  In applying this standard, the Court must defer to the administrator's interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith.  *Davis*, 887 F.2d at 695.  However, a court may not "merely . . . rubber stamp the administrator's decision," but must actually "exercise [its] review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

## II.   Denial of Benefits

Upon reviewing the administrative record, the Court finds that G.E.'s decision to deny benefits was not arbitrary and capricious.  In making its determination, G.E. relied on the opinions of Dr. Ball, Dr. Cowl, and their own medical consultant, who all determined that Kirchner was able

7

to return to a sedentary job with primarily administrative responsibilities. Since Kirchner's job description described her duties as largely sedentary, G.E. was not acting arbitrarily and capriciously in determining that Kirchner was able to return to her previous position. Although Dr. Wright and Dr. Duvernoy disagreed with this assessment and believed that Kirchner was disabled, G.E.'s decision to rely on the opinions of Dr. Wright and Dr. Cowl was not arbitrary or in bad-faith. The Sixth Circuit has previously noted that:

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

Further, G.E. had good reasons to rely on the opinions of Dr. Ball and Dr. Cowl. First, these opinions were based on a myelogram done on March 5, 2003, which was completely unremarkable. Additionally, a functional assessment of Kirchner performed on April 4, 2003, showed that she was able to tolerate at least a four hour workday of sitting or standing. Even one of the doctors who determined that Kirchner was disabled, Dr. Wright, appeared to modify her determination several times. Dr. Wright's attending physician's statement of April 14, 2003, listed Kirchner's impairment as Class 4, meaning "capable of clerical/administrative activity." (AR at 292.) However, on May 2, 2003, Dr. Wright wrote G.E. expressing her opinion that Kirchner should not return to work. Then, on June 2, 2003, Dr. Wright wrote G.E. stating that Kirchner needed a sedentary job with primarily administrative responsibilities. Although Dr. Wright was uncertain whether Kirchner would be able to return to a full time job, she did agree with Dr. Ball's assessment of a gradually increasing part time schedule.

In light of this conflicting evidence, it was not arbitrary and capricious for G.E. to rely on the determinations of Dr. Ball and Dr. Cowl, both of whom concluded that Kirchner was able to return to her previous position. G.E. has to show only that it has a reasoned explanation for its decision. Given the opinion of two medical experts, supported by a functional assessment of the plaintiff, the Court cannot conclude that G.E.'s determination was unreasonable such that its decision was arbitrary and capricious.

To the extent that Kirchner may also be claiming that G.E. acted arbitrarily and capriciously in denying benefits based on her psychiatric impairment, the Court concludes otherwise. Although Dr. Cornellier and Dr. Wright expressed their opinion that Kirchner was disabled due to her disability, Dr. Polsky concluded upon a review of Kirchner's records that there was no evidence substantiating a psychiatric limitation. Again, a plan administrator generally does not act arbitrarily and capriciously in relying on the opinion of one medical expert over another. *McDonald*, 347 F.3d at 169. Further, Kirchner never provided G.E. with the Social Security opinion awarding her disability based on her depression. Moreover, nothing "indicates that [Kirchner] was in fact disabled due to depression at the time of filing her claim for long-term disability benefits. . . . Second, at the time [Kirchner] filed for long-term disability benefits, she did not claim she was disabled due to depression." *Bishop v. Metropolitan Life Ins. Co.*, 70 Fed.App'x 305, 311 (6th Cir. 2003). Additionally, Dr. Polsky was correct in his determination that there was no evidence of a psychiatric evaluation, testing, or formal mental status examination. Given this lack of objective evidence, G.E.'s decision to deny disability benefits on the basis of depression was not arbitrary and capricious.

### III.   Reimbursement

G.E. also seeks reimbursement under the Other Income provision of the disability policy. Under this provision, monthly benefits owing under the policy are reduced by the amount of any

additional other income received by the claimant during the disability period. Specifically, other income includes any amount of disability to which the claimant was entitled under the Social Security Act. Since Kirchner was receiving Social Security benefits while G.E. was paying disability benefits from February 2, 2003, to April 30, 2003, G.E. claims that it is entitled to reimbursement in an amount equal to Kirchner's Social Security award during that time period. However, ERISA does not provide G.E. with a remedy in the instant action. "A fiduciary may bring a civil action under § 502(a)(3) of ERISA (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Sereboff v. Mid Atl. Med. Serv.*, 126 S.Ct. 1869, 1873 (2006).

To qualify its claim for reimbursement as equitable relief, G.E. must "specifically identify a particular fund–distinct from the defendant's general assets–and a particular share of that fund to which the plan was entitled." *Gilchrest v. Unum Life Ins. Co. of America*, No. 06-4143, 2007 WL 3037239, *7 (6th Cir. Oct. 17, 2007). However, G.E. has not identified any specific, distinct fund from which it is entitled to reimbursement; rather, G.E. merely seeks general compensatory damages. As the Sixth Circuit noted in *Gilchrest*, a fiduciary cannot assert a right to an equitable lien unless the plan's provisions identify a distinct fund and give the plan the ability to recover from that fund. *Id.* at *8 (provision stating that fiduciary "has the right to recover any overpayments due to . . . receipt of deductible sources of income" identified specific fund – any overpayments – such that equitable lien was created.). In the present case, G.E.'s plan does not contain any provisions identifying a fund (e.g. overpayment of benefits) and giving G.E. the right to recover from that fund. Although the plan subtracts from the claimant's monthly benefit any income that qualifies under the Other Income provision, there is no provision giving it the express right to recover any overpayment

10

resulting therefrom.  Thus, because G.E.'s claim for reimbursement is not equitable in nature, G.E. does not have a remedy under ERISA.  Therefore, the Court will deny G.E.'s motion for judgment on the administrative record with respect to its reimbursement claim.

## **Conclusion**

For the foregoing reasons, the Court will grant G.E.'s motion for judgment on the administrative record with respect to its denial of Kirchner's disability benefits, but deny the motion with respect to G.E.'s claim for reimbursement.

An Order consistent with this Opinion will be entered.


Dated:  January 2, 2008                         /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE